IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54135-1-II |
| Respondent, | |
| v. | |
| PITA DALLAS ILI, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Pita Ili appeals his conviction for second degree assault. Ili argues that the trial court's failure to dismiss juror 29 violated Ili's right to an impartial jury because the juror's association with a witness and involvement with the investigating police department resulted in the juror harboring both actual bias and implied bias.

We hold that the trial court did not abuse its discretion when it declined Ili's motion to dismiss juror 29. Accordingly, we affirm.

FACTS

Ili was involved in a verbal dispute with Aaron Klien, a coworker, while at work. It was Klien's first day on the job and Klien felt that throughout the day Ili had been criticizing Klien's performance. While Klien was unloading the delivery truck, Ili confronted Klien and got in Klien's face. The two proceeded to get into "a verbal exchange" that resulted in Ili grabbing Klien by the throat and forcing him down to the ground. 1 Verbatim Report of Proceedings (VRP) at 145. As Klien fell backwards his hard hat came up and he incurred a laceration on the back of his head as

it hit the corner of a building. Klien immediately had difficulty breathing and could feel Ili squeezing harder and harder. While on the ground, Ili was kneeling over Klien and kept his hands on Klien's throat. It was becoming harder for Klien to breathe and he felt a "pop" in his neck. *Id.* at 149. Klien felt lightheaded and dizzy.

Ili disputed Klien's account, claiming that he felt threatened as a result of the verbal altercation with Klien and grabbed Klien and took him to the ground to stop the argument. Ili claimed that he never squeezed Klien's throat.

Ili's coworkers pulled Ili off Klien. Dustin Fritz, the site supervisor, then told Ili to leave, which he did. Fritz also witnessed Ili take Klien to the ground. After the assault, Klien called 911. Officer David Maclurg of the Lacey Police Department responded to the call and spoke with Klien at the scene. Maclurg noticed that Klien was having a hard time clearing his throat, speaking, and swallowing. Maclurg later called Ili, and they discussed the assault over the phone. At Maclurg's request, Ili turned himself in and consented to a recorded interview at the police station. The State charged Ili with second degree assault. The case proceeded to a jury trial.

During voir dire, the court asked the prospective jurors if they knew any of the potential witnesses, which included Maclurg. Juror 29 responded that he knew Maclurg because he (juror 29) was a former reserve police officer for the Lacey Police Department "and current chaplain for Lacey Police Department." *Id.* at 22. Juror 29 elaborated that he had probably last seen Maclurg approximately three weeks earlier. The court then asked juror 29, "if you were selected to serve as a juror in this case, would your current position and your prior position as it touches upon your familiarity with Officer Maclurg cause you to potentially give more weight to his testimony if he's called as a witness in this trial than another witness?" *Id.* at 22-23. Juror 29 responded, "No." *Id.*

at 23. No one inquired further about juror 29's position as chaplain at the police department or his connection with Maclurg. Juror 29 also indicated that despite being the chaplain for the investigating police department, he did not know anything about this case.

After the court finished its questions and the prospective jurors left the courtroom, the court discussed potential for cause challenges with the parties. The court noted that multiple jurors had responded that they knew a witness and asked if there were any motions regarding those jurors. Ili moved to remove juror 29 because "[f]amiliarity with the officer is one issue. The other is the depth of potential familiarity as the chaplain." *Id.* at 33. The State responded that the record did not support the juror's removal for cause. The court stated, "I'm going to for now deny the motion as to 29. It may be renewed after voir dire if we can have a discussion then." *Id.* at 34.

The attorneys then had an opportunity to ask the prospective jurors additional questions. When asked if anyone had previously served on a jury, juror 29 indicated he had and that it had been a challenging experience. Juror 29 explained "you start going through the evidence and realizing, . . . that this is somebody's livelihood or something that's at stake . . . it's another person involved and we should care about. [sic] We're all human beings and we care about them." *Id.* at 66. Juror 29 indicated that he had voted to acquit because the prosecution failed to prove its case. The juror also noted that he thought it was very important to listen to other jurors, even if he did not agree with them, because "everybody needs to be heard and have a voice, and sometimes people have a piece that maybe you forgot about or they can bring in to help." *Id.* at 48-49.

Later in the proceedings, when the jurors were asked about whether they volunteered in the community, juror 29 explained that he was "a volunteer chaplain" and helps "families in the community when they're going through tragedies and tough situations." *Id.* at 71. No one followed

up on juror 29's answer to obtain more information about the exact nature of his volunteer work. Juror 29 was seated on Ili's jury.

At trial, Maclurg testified about his response to the scene, his interaction with Klien, and his phone conversation with Ili. The State admitted the recordings of Maclurg's interviews of Ili and Klien. The jury found Ili guilty of second degree assault.

Ili appeals.

## DISCUSSION

### I. ACTUAL BIAS AND IMPLIED BIAS

Actual bias is defined in RCW 4.44.170(2) as "a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."

A court must remove a juror for actual bias when the court is satisfied that the challenged juror's state of mind prevents the juror from being impartial. RCW 4.44.170(2).[1] A juror with preconceived ideas who gives equivocal answers to questions can remain on a jury so long as the trial court is satisfied that the juror can set those preconceived ideas aside. RCW 4.44.190; *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991). There must be proof that the challenged juror cannot be impartial. *State v. Birch*, 151 Wn. App. 504, 512-13, 213 P.3d 63 (2009).

A party can also challenge a juror, "For [implied bias] as when the existence of the facts is ascertained, in judgment of law disqualifies the juror." RCW 4.44.170(1). RCW 4.44.180 provides an exclusive list of the bases for a challenge based on implied bias. Relevant to this case, a party

---

[1] CrR 6.4(c)(2) addresses challenges to jurors for cause. That rule, in turn, states that "RCW 4.44.150 through 4.44.190 [ ] govern challenges for cause." CrR 6.4(c)(2).

can challenge a juror for implied bias if the juror is employed for wages by one of the parties. RCW 4.44.180(2).

However, even if the State is a party in a criminal proceeding, state employees are not automatically barred from serving as jurors in a criminal trial. *State v. Johnson*, 42 Wn. App. 425, 429, 712 P.2d 301 (1985). A state employee is only barred from serving on a criminal trial, under RCW 4.44.180(2), if there is "a substantial relationship between the interests the prospective juror has in his employment and the interest the government is advancing as a litigant." *Id.*

## II. ANALYSIS

### A. ACTUAL BIAS

Ili argues that the trial court should have removed juror 29 for actual bias because the juror knew one of the witnesses, and because juror 29 served as a chaplain for the police department that investigated Ili's case. We disagree.

We review a trial court's ruling declining to dismiss a juror for an abuse of discretion. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 806, 425 P.3d 807 (2018). The abuse of discretion standard is used because the trial court is in the best position to observe a juror's demeanor, and to interpret and evaluate a juror's answers when determining if a juror can be impartial. *Noltie*, 116 Wn.2d at 839-40. A trial court abuses its discretion when its decision is contrary to law, manifestly unreasonable or based on untenable grounds. *Sassen Van Elsloo*, 191 Wn.2d at 807. A decision is based on untenable grounds when it rests on facts unsupported by the record. *Id.*[2]

---

[2] Ili in passing notes that he believes that the standard of review is de novo. However, as noted above, the Washington Supreme Court has conclusively stated that the trial court's decision to remove a juror is reviewed for an abuse of discretion. We are bound by that precedent. *Buck Mountain Owner's Ass'n v. Prestwich*, 174 Wn. App. 702, 716, 308 P.3d 644 (2013).

Here, there is no evidence that juror 29 exhibited a state of mind that prevented him from being impartial. Ili relies solely on speculation about juror 29's employment and relationship to a witness to support his actual bias claim. But Ili fails to identify any portion of the record in which juror 29 expressed an opinion regarding a party, a witness, or the proceedings, or exhibited a state of mind that would prevent him from being impartial. Nor does Ili point to any information in the record showing that juror 29, had he formed any opinions, would have been unable to set those opinions aside in order to be impartial. Because the record fails to show that juror 29's state of mind would prevent him from being impartial, the trial court did not abuse its discretion by denying Ili's challenge for cause based on actual bias. *Birch*, 151 Wn. App. at 512-13.

The record, in fact, demonstrates that juror 29 recognized the importance of Ili's right to a fair trial and the importance of impartial deliberations. Juror 29 stated his familiarity with Maclurg would not cause him to give more weight to Maclurg's testimony than to the testimony of the other witnesses. Additionally, when juror 29 spoke about his previous jury service, he noted that the jury's verdict had significant consequences and it was important that the State prove its case. Juror 29 also spoke about the importance of listening to the other jurors during deliberation, even if he did not agree with them, explaining "everybody needs to be heard and have a voice, and sometimes people have a piece that maybe you forgot about or they can bring in to help." 1 VRP at 48-49. These answers support the conclusion that juror 29 could try the issue impartially and did not harbor actual bias. RCW 4.44.170.

Thus, the trial court did not abuse its discretion when it declined to dismiss juror 29 for actual bias.

B. IMPLIED BIAS

Ili argues that juror 29 should have been removed for implied bias because the juror knew Maclurg and because the juror was a chaplain for the police department that employed Maclurg. Ili's argument is predicated on his apparent belief that the Lacey Police Department was a party to this case. Ili contends juror 29 should have been struck for implied bias under the employer prong of RCW 4.44.180(2) because there was a "'substantial relationship'" between the juror's employment interest and the State's interest in the outcome of the litigation. Br. of Appellant at 11 (quoting *Johnson*, 42 Wn. App. at 429). Ili contends, without citation to any fact or statement in the record, that if juror 29 voted to acquit, then it could demoralize the police department, erode trust between the officers and juror 29, and result in juror 29's termination from his role as a chaplain.

The State responds that nothing in the record demonstrates that juror 29's personal and financial interests would be impacted by the outcome of the case. The State also notes that the record is unclear if the police department actually employed juror 29, or if he only served in a volunteer capacity.

We conclude that the trial court did not err in declining to remove juror 29 for implied bias under RCW 4.44.180(2).

RCW 4.44.180 provides an exclusive list for the grounds that would cause a juror to be removed for implied bias. Under RCW 4.44.180(2), a juror may be removed if that juror is employed for wages by one of the parties. As noted above, state employees are not automatically barred from serving as jurors in a criminal trial even though such cases are brought by the State. *Johnson*, 42 Wn. App. at 429. A state employee is only barred from serving on a criminal trial,

under RCW 4.44.180(2), if there is "a substantial relationship" between the juror's interest in his employment and the government's interest in the proceeding. *Id.* A trial court's denial of a challenge for cause based on implied bias is also reviewed for an abuse of discretion. *Id.* at 428.

Here, RCW 4.44.180(2) is not implicated because the Lacey Police Department is not a party to the litigation. RCW 4.44.180(2) requires that the employer be a party to the proceedings. The parties in this case are the defendant, Pita Ili, and the State of Washington. Ili cites no binding authority holding that an investigating law enforcement agency is a party in a criminal case instituted by the State of Washington. Although a city's police department may assist with the investigation and play an integral part in the process of bringing charges, that is not a relevant consideration to the standard set forth in RCW 4.44.180(2) or *Johnson*. 42 Wn. App. 425.

Furthermore, it is not clear from the record that juror 29 was actually employed by the Lacey Police Department or received wages for the work he did there. Under RCW 4.44.180(2) a prospective juror is barred from serving on a jury if one of the parties employs the prospective juror for wages. Juror 29 merely said he was a chaplain for the Lacey Police Department. He was not asked whether he worked at the Lacey Police Department for wages, and there is nothing in the record that demonstrates juror 29 received any type of financial compensation from the Lacey Police Department for his services. Additionally, later in the proceedings, juror 29 stated that he was a volunteer chaplain. No one followed up on this answer, so the record does not reflect whether his work as a volunteer chaplain was connected to his position at the Lacey Police Department or some other law enforcement agency.

As the State notes, RCW 41.22.030 and RCW 41.22.040 allow local law enforcement agencies to utilize a volunteer chaplain to provide services to officers, their families, and the

general public. Whether actual or implied, "[a] relationship with the government, without more, does not establish bias." *State v. Cho*, 108 Wn. App. 315, 324, 30 P.3d 496 (2001) (citing *Dennis v. United States*, 339 U. S. 162, 70 S. Ct. 519, 94 L. Ed. 734 (1950)).

Ili's also argues that even if juror 29 did not receive wages from the Lacey Police Department, the juror should still have been removed for implied bias because a decision in favor of Ili could "erode trust" between the juror and the officers of the Lacey Police Department, thus influencing juror 29 to vote to convict. Br. of Appellant at 11. However, RCW 4.44.180(2) and *Johnson* are based on the threshold determination that the juror is receiving wages from one of the parties. We do not consider the juror's interest until it has been established that the juror is receiving wages from a party to the case. Ili effectively concedes that a threshold element is absent.

The record does not show that juror 29 worked for a party to the litigation. Because the record does not support Ili's claim, we conclude that Ili has not established implied bias based on the employment for wages provision of RCW 4.44.180(2).

At most, the record shows that juror 29 had some workplace interaction, unclear in its degree, with a witness. Ili failed to develop a record that would enable us to determine what type of relationship juror 29 had with Maclurg. And Ili fails on appeal to provide any legal authority that has extended RCW 4.44.180(2) to include instances where the juror merely works with one of the witnesses. Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Finally, Ili's reliance on *State v. Kebble*, a Montana Supreme Court case, is unpersuasive. 2015 MT 195, 380 Mont. 69, 353 P.3d 1175. Ili claims *Kebble* is informative because *Kebble* held

that a prospective juror should have been removed because the juror worked at a government agency that was involved with that case's investigation. *Kebble* is distinguishable because the underlying statutes at issue differ significantly. Montana's statute prohibits a juror from serving if that juror is employed by an individual or entity "on whose complaint the prosecution was instituted." MONT. CODE ANN. §46-16-115 (2019). RCW 4.44.180 is not as inclusive as Montana's statute, and being employed by an investigating entity or by an entity whose complaint instigated the prosecution is not within the exclusive list of acceptable grounds to remove a juror for implied bias. Therefore, *Kebble* is not persuasive here.

We conclude there was no basis for removal under RCW 4.44.180(2), therefore the trial court did not abuse its discretion when it declined to dismiss juror 29 for implied bias.[3]

---

[3] Ili filed a Statement of Additional Authorities citing *State v. Boiko*, 138 Wn. App. 256, 156 P.3d 934 (2007). In *Boiko*, Division Three of this court held that implied bias can be found in "exceptional" circumstances not listed in RCW 4.44.180. 138 Wn. App. at 260-65. *Boiko* is not helpful to Ili because Ili specifically confined his claim to RCW 4.44.180(2). He did not argue that we should hold, under either the Sixth Amendment or under a liberal construction of RCW 4.44.180 generally, that juror 29 harbored implied bias. Moreover, Ili cannot expand his claim by citing to *Boiko* in a Statement of Additional Authorities. RAP 10.8. Furthermore, Ili failed to develop the record to establish the nature of juror 29's relationships with Maclurg and the police department; therefore, it is not clear how we could liberally construe RCW 4.44.180 to cover these relationships when we have no information on the nature of the relationships.

Nor do we find this appeal to be an exceptional case after Ili, in essence, waived this challenge below. Although the trial court initially denied Ili's challenge to juror 29, it directed Ili to re-raise the challenge after voir dire was finished, if he felt inclined to do so. Despite that opportunity, Ili failed to follow up on juror 29's relationship with the witness and the police department, which would have developed the record for another challenge and for our review. Additionally, Ili did not elect to re-raise the challenge or use a peremptory challenge on juror 29. This suggests that either Ili's concerns over juror 29 had been assuaged by the close of voir dire or that Ili, in fact, wanted juror 29 on his jury due to the juror's expressed sympathy for defendants.

CONCLUSION

We hold that the trial court did not abuse its discretion in declining to dismiss juror 29 for actual or implied bias. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
CRUSER, J.

We concur:

_____
MAXA, P.J.

_____
VELJACIC, J.